Peck, J.
Plaintiff was injured by falling down steps leading from the sidewalk to an entrance vestibule of an apartment house, owned by defendant, in which plaintiff was a tenant. The vestibule was thirty-two inches below the street level. There were four steps, two of which were outside the building line and two inside. Plaintiff slipped on the second step going down, being the one just outside the building line, and fell the remaining two steps into the vestibule. The vestibule was completely enclosed except for the entranceway from the sidewalk. On the side opposite the entranceway was the outer door of the building. The other sides were, respectively, a wall containing the tenants ’ mail and call box and an entrance door to a basement shop. The accident happened shortly after sunset on a rainy evening in September. Plaintiff testified that it was raining very hard and that it was dark, then “ I closed my umbrella and I took the first step and then I slipped on the second step, on the right side of the second step, and I could not find anything to get hold of, and I fell down all the way to the bottom of the vestibule, on my left leg.”
Plaintiff testified that there was no light burning in the vestibule at the time. Plaintiff and her brother, who shared an apartment with her in the building, testified that the light in the vestibule had not been lighted for approximately eight months prior to the accident. There was no railing or pilasters along the sides of the steps. Plaintiff contends that there should have been a light and railing for her protection and *94 that their absence was the proximate cause of her fall. Defendant contends that no railing was required and that plaintiff fell or slipped simply because the steps were wet from the rain.
The trial court included in its charge section 40 (now § 37) of the Multiple Dwelling Law, subdivision j of section C26-219.0 and section C26-226.0 of the Administrative Code of the City of New York. The Multiple Dwelling Law requires a light for the vestibule, entrance hall and every public hall and stair of multiple dwellings. The first section of the Administrative Code requires entrance steps which project beyond the building line to be included between ornamental columns, pilasters or cheek pieces at least three feet high; the other section requires every entrance or flight of steps projecting beyond the line of the street and descending into a cellar or basement story, where such entrance or flight of steps shall not be covered, to be enclosed with a railing on each side, permanently put up, from three to three and one-half feet high, with a gate to open inwardly, or with two iron chains across the front of the entranceway, one near the top and one in the center of the railing, to be closed during the night, unless there be a burning light over the steps, to prevent accidents.
Defendant challenges the applicability of any of the provisions of law so charged by the trial court.
Defendant cites the decision of this court in Flanagan v. Rosoff (260 App. Div. 776) holding that the Multiple .Dwelling Law does not require light on exterior steps and that its purpose is to enforce illumination of specific interior portions of a building. Defendant also cites the decision of the Appellate Division, Second Department, in Indinali v. Lerner (243 App. Div. 735) holding on like grounds that a plaintiff could not avail herself of the absence of light in a vestibule adjacent to the stoop, leaving the stoop in darkness, as a claimed consequence of which plaintiff fell. Similarly, defendant here com tends that, as plaintiff fell on an outside step, she may not avail herself of defendant’s failure to light the vestibule although a light there would have served also to light the outside steps.
While we agree with the general proposition which defendant urges that there is no duty on the part of an apartment house owner to light outside steps and that a plaintiff may not take advantage of the owner’s failure to light the interior insofar as it affects the exterior, we think the proposition is not altogether applicable to the physical arrangement here. The cases and rule on which defendant relies assume a separation *95 of the inside from the outside, as by , a doorway. Here there was no doorway or separation between the steps outside the building line and the steps inside the building line. The single flight of steps extended from eighteen inches outside the building line down into the building and vestibule. The entrance door, instead of being at the building line, was well inside. The difference is important. A door at the building line not only divides the outside steps from the inside but divides the risk. Had a door stood at the dividing line, plaintiff might not have fallen down the inside steps. The single flight of steps extending into the vestibule was a single risk arising from the construction and condition. The construction did not isolate the outside steps in fact and does not permit of their isolation in the application of the statute. It would not be reasonable to say that the statute applied to the third step but not to the second, and that plaintiff might recover had she fallen on the third step but may not recover because she fell on the second step. As there is no physical or rational basis for distinguishing between the several steps of this single flight, there is no legal basis for distinguishing between them. It was proper, therefore, for the court to charge the Multiple Dwelling Law and permit the jury to determine, whether the violation was a proximate cause of the accident, or whether, as defendant contends, plaintiff’s fall was caused simply by rain water on the steps, in which event defendant would not be liable.
In respect to the two sections of the Administrative Code included in the charge, we reach a different conclusion. As the Court of Appeals has said in De Haen v. Rockwood Sprinkler Co. (258 N. Y. 350), “ The violation of a statute calling for a prescribed safeguard in the construction of a building does not establish liability if the statute is intended to protect against a particular hazard, and a hazard of a different kind is the occasion of the injury (Am. Law Inst., Restatement of Torts [No. 4], § 176; Lang v. N. Y. C. R. R. Co., 227 N. Y. 507; 255 U. S. 455; Boronkay v. Robinson & Carpenter, 247 N. Y. 365; DiCaprio v. N. 7. C. R. R. Co., 231 N. Y. 94).” We must determine, therefore, whether the hazard occasioning plaintiff’s injury was a hazard contemplated by the protective provisions of the Administrative Code.
Subdivision j of section Q26-219.0, requiring ornamental columns, pilasters or cheek pieces at the sides of steps projecting beyond the building line, is obviously for the purpose *96 of protecting pedestrians on the sidewalk from stumbling over or falling into such steps. The columns or cheek pieces are not intended to serve the purpose of a handrail to assist persons entering the premises, and there is no law requiring such handrail for outside steps (see Hunter v. G. W. H. W. Realty Co., Inc., 247 App. Div. 385).
Section C26-226.0, providing for a cover or enclosure with a railing on each side of steps projecting beyond the line of the street and descending into ¿my cellar or basement story, is likewise for the purpose of preventing. pedestrians on the sidewalk from falling into cellar openings. It was not intended to provide an aid for persons using the front steps for enter-" ing a building. If applied to the entrance steps in this case, we would have to say that a cover, gate or iron chains were required across the front of the entranceway. Plainly, the purpose of the statute is not to bar the entranceway of an apartment house.
The sections of the Administrative Code have no application to the case. It was error, therefore, to include them in the charge. The judgment appealed from should be reversed and a new trial ordered, with costs to appellant to abide the event.
Maetbst, P. J., Glennon, Does and Callahan, JJ., concur.
Judgment unanimously reversed and a new trial ordered, with costs to appellant to abide the event.